UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------
DARRYL AND VALERIE SAMSELL, et al.,

               Plaintiffs,                        Civil Action No. No. 09-cv-00667

    v.

WELLPOINT, INC., et al., ,

               Defendants.
---------------------------------------------------------

**ORDER ON INFORMAL APPLICATION REGARDING**
**ELECTRONIC DISCOVERY PROTOCOL**

The parties in the consolidated civil actions in *Samsell et al. v. Wellpoint, Inc., et al.* (the "Parties"), having fulfilled their obligation to confer in accordance with Rule(26f) of the Federal Rules of Civil Procedure and this Court's Orders dates July 16, 2009 (No. 09-cv-00667, Docket No. 78)("the July 16 Order") and CMO 1 (Docket No, 79) present this joint proposed Electronic Discovery Protocol ("Protocol").  Pursuant to the July 16 Order and CMO 1, where the Parties disagreed about "certain terms," the have "{set forth their respective positions in footnotes to the term of order and about which there is no agreement and include[d], in a different font, alternate language.

**A.  General Terms.**

    1.    <u>Application</u>.  The procedures set forth in this Protocol shall govern the production of "documents" and "electronically stored information" (as those terms are used in the Federal Rules of Civil Procedure including Rule 34(a)) that are stored in electronic format, including paper documents that have been converted to an electronic format ("Data") in *Samsell* and *O'Brien*.  This Protocol shall not govern the production of Data from Defendants' claims systems, which will be produced to Plaintiffs in a jointly-agreed upon format.  The Protocol does not govern any production of back up media.  In addition, in the event that any Party

identifies a particular source of responsive documents or electronically stored information for which application of this Protocol would be unduly burdensome or unpractical (*e.g.*, Data for which word searches would be impossible or otherwise impractical), the Party identifying the source will promptly notify the other Parties and the Parties will meet and confer concerning appropriate modifications of this Protocol with respect to that source.

2.  Objective. This Protocol is designed, and shall be interpreted to ensure that all responsive Data are produced by the Producing Party while simultaneously seeking to minimize unnecessary costs associated with that production. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Requesting Party. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure or applicable State and Federal statutes, they shall be controlling.

3.  Production Period. The "Production Period" from which Data is to be produced under this protocol shall be determined by reference to the applicable discovery requests. The Parties shall meet and confer in an attempt to resolve promptly any disputes over the appropriate Production Period and, in the event of any such disputes, the Production Period under this Protocol shall be agreed to by the Parties or as ordered by the Court. The Producing Party is subject to obligations under the Federal Rules regarding the requirement to supplement responses.

4.  Discovery Confidentiality Order. All Data that would be considered confidential under the Discovery Confidentiality Order shall be produced subject to the Discovery Confidentiality Order agreed to by the Parties and ordered by the Court in this Litigation (the "Discovery Confidentiality Order").

5.  Reservation of Rights. All Parties reserve the rights under the Federal Rules of

Civil Procedure and the Federal Rules of Evidence for matters relating to the production of Data that are not specifically addressed in this Protocol.

**B. Keyword Screening Procedure.**

1. <u>Implementation</u>.  In connection with providing written responses to discovery requests seeking Data, the Producing Party will implement a Keyword Screening Procedure, as defined in this Section B, except as provided in Paragraph A1 above with the respect to Data sources for which such a procedure would be unduly burdensome or impractical.  The purpose of the Keyword Screening Procedure is to assist the Producing Party in identifying potentially responsive documents and shall in no way relieve the Producing Party of its obligation to produce responsive documents of which it is or becomes aware , including any documents from sources other than those for which the Keyword Screening Procedure is elected pursuant to this Protocol.  The Producing Party shall provide in writing the following information (collectively, the "Production Methodology"):

    a.  A list of individuals (both current employees and any former employees who have responsive Data within each Producing Party's possession, custody, and control) that the Producing Party believes, based on a good faith, reasonable search, are most likely to possess Data that is responsive to the Requesting Party's document requests using all reasonably available information, including its own documents, to identify such persons.  These individuals are known as the "Production Custodians."

        (i)  for each Production Custodian, a list of each individual's current job title (if applicable), a brief explanation of why a Producing Party is identifying the individual as a Production Custodian (which for particular custodians could include a description of past roles, positions, or functions, as applicable), and the individual's dates of employment;

     (ii) a list of all servers, network drives, other drives and other potential sources of responsive Data for Production Custodians; [1]

     (iii) a list of all servers, network drives, other drives and other potential sources of responsive Data that are not associated with any Production Custodians, including any Data sources associated with former employees that do not include back-up tapes or other back up media (i.e., "Non-Custodial Sources"); and [2]

The result of applying the Keyword Screening Procedure to Production Sources is expected by the Parties to yield potentially responsive Data. From those potentially responsive Data, the Producing Party will produce all non-privileged, responsive documents consistent with this Protocol.

   b. a list of file types (*e.g.*, .xls, .doc, .ppt, .wpd, .pst, .ost, .zip, .rar) that the Producing Party reasonably believes are likely to include responsive Data and that the Producing Party intends to search using keywords. If there are any file types within the Production Sources that the Producing Party believes should not be searched, the Producing Party will identify them to the Requesting Party;

   c. a list of keywords that are reasonably likely to identify documents that are responsive to the Requesting Party's document requests, including any commonly used abbreviations, alternate spellings, alternative or previous names used to refer to particular groups,

---

[1] The Court rejected the "sixty-day" look back in this case because, unlike <u>Malchow</u>, there was no agreement to it and there is no reason why such a limitation on discoverability should be imposed.

[2] The defendants' proposed language, which contemplates providing only a "general listing" of sources of responsive data, is inconsistent with the "identification" component of Fed. R. Civ. P. 26(b)(2)(B), which requires identification of sources of potentially inaccessible information. Relatedly, it does not provide a meaningful way to identify the locations of responsive information and may result in prematurely ruling out the need to list back-up media.

processes, categories, procedures, and databases reasonably known to the Producing Party (the "Production Keywords").   The Producing Party also shall notify the Requesting Party of the name and version of software that is being used to conduct keyword searches.  The Parties will periodically assess whether the Production Keywords are functioning to flag documents as intended and will notify the other Party if either reasonably believes Production Keywords should be added or deleted;

        d.  a complete list and description of all available metadata fields for each document type likely to include responsive Data and the fields that the Producing Party proposes to produce for each document type, recognizing that metadata may not be available and particular fields may not be populated for particular documents. Once the metadata fields are established, each load file shall be consistently formatted and, to the extent there are any changes, additions or deletions to the load file, such changes must be described in the cover letter with the production.[3]

        e.  for each production file type listed under subpart (b) above, the Producing Party shall produce a standard fielded load file with the user visible information about particular Data that describes the metadata identified by the Requesting Party pursuant to paragraph (d) above; and

        f.  an estimated timeframe for the production of Data responsive to each request within the Requesting Party's document requests (the "Production Timeframe"). The Production Timeframe may involve an incremental production. Upon execution of this Protocol, the Parties will meet and confer to discuss prioritization of particular Production Custodians or other Data

---

[3] In <u>Malchow</u>, Ingenix is a nonparty to this case and so the parties agreed to address its production in a particular fashion which apparently sought to limit some of the burden on it. Here, Ingenix is a party and shall be treated like all other parties.

sources.

    2.    <u>Discovery from Other Proceedings</u>. The Parties will meet and confer on any discovery produced in other UCR actions in federal courts, to the extent such discovery is relevant and implicated by the Producing Party's discovery requests.

    3.    <u>Modification</u>. Within ten business days of receiving the Producing Party's proposed Production Methodology, as described above, the Requesting Party may ask the Producing Party to modify the Production Methodology (e.g., add a Production Custodian, file type, or metadata field), and the Producing Party shall make any reasonable modification proposed by the Requesting Party. At any time during the production of Data, the Requesting Party may propose modifications to the Production Methodology, and modifications shall be made by the Producing Party upon reasonable justification by the Requesting Party (e.g., if the Requesting Party identifies an individual listed on a document who was not included as a Production Custodian and if the individual is likely to have other responsive Data and is not peripheral to the issues in the Action). The Parties shall attempt to resolve any proposed modifications to the Production Methodology through a meet and confer process and, if any disputes cannot be resolved, through the joint letter process set forth in the Court's rules.

    4.    <u>Privilege Keywords</u>.  The Producing Party shall select keywords that it believes are reasonably likely to indicate potentially privileged information (for example, without limitation, the names of counsel, law firms, and standard privilege language) (the "Privilege Keywords"). Because the production of the Privilege Keywords may disclose the nature of the privileged information, the Producing Party need not divulge the Privilege Keywords to the Requesting Party unless their propriety is challenged by the Requesting Party and the Court orders the disclosure of the Privilege Keywords throughout the pendency of the litigation. The

Producing Party shall retain a list of the Privilege Keywords. The Producing Party will not use Privilege Keywords to assert privilege without also reviewing each document to ensure the appropriateness of asserting privilege.  Similarly, the Producing Party's assertion of privilege shall not be limited to those documents that contain Privilege Keywords. The following communications need not be logged: (i) all communications between counsel of record for Defendants and in-house attorneys representing Defendants since the date the Complaint in Civil No. 09-667 was filed, except that the parties shall preserve all such communications, including those related to discovery; (ii) all communications from counsel of record to their respective non-attorney clients since the date the Complaint in Civil No. 09-667 was filed, except that the parties shall preserve all such communications, including those related to discovery; (iii) all communications between an in-house attorney or counsel of record to a non-attorney client that concern scheduling, logistical, and/or other non-substantive or ministerial matters since the date the Complaint in Civil No. 09-667 was filed. The foregoing shall not relieve any Party from logging communications that do not fall within these express categories and it does not absolve a party of its obligations to preserve communications, including those related to discovery and preservation of evidence.[4]

     5.    <u>Privilege Key Word Search</u>.  Through application of the Production Methodology, the Producing Party may identify Data potentially responsive to the Requesting Party's document requests. The Producing Party shall then perform a search of the resulting Data using the Privilege Keywords (the results of such search being the "Privilege Data"). The privileged Data

---

[4] The Court has adopted this approach to logging post-complaint communications to avoid unnecessary expenses but has simultaneously reiterated the need to preserve such communications so they are available, if necessary, to resolve disputes, such as those that may arise concerning discharging preservation obligations or discovery compliance.

shall not be reviewed unless and until the remaining Data, which will be referred to as the "Search Results Data," have been reviewed and produced as described below.

      6.    <u>Review and Treatment of Production Data</u>.  After removing the Privilege Data through the process described in paragraph 5, the Producing Party may review the remaining Search Results Data for privilege and responsiveness. Any responsive, non-privileged Data that result from that review of the Search Results Data will be called "Production Data." The Production Data shall be produced in the format and manner described in this Protocol.

      7.    <u>Review and Treatment of Privileged Data</u>.  After the Producing Party has completed its review of the Privilege Data, as described in Paragraph 5, it shall produce any responsive non-privileged Dat culled from that review as additional Production Data.  If a party withholds responsive Data based on a claim of privilege, that party shall provide a privilege log in compliance with Local Civil Rule 34.1.  The Parties agree that a privilege log will be produced within forty-five days after responsive Data are produced.  Any requested changes in the foregoing timelines will be discussed among the Parties and will not constitute a waiver of any privilege or protection and will be subject to court-approval.  If a non-privileged document within the Privileged Data is related to another document as defined in paragraph C.5 *infra*, the Producing Party will produce all related documents (in whole or part) which are not privileged (redacting the privileged documents as necessary).  In addition, because of the de-duplication procedures described in Paragraph C.6 below, a privileged document may only be logged one time, even though it may exist in the files of multiple custodians.  The purpose of this section is to minimize the removal of documents from the Production Data, in order to remove only that part of the document which is necessary to shield the information subject to the asserted

privilege.[5]

**C. General Document Production Procedures.**

    1. <u>Format.</u>  The Producing Party shall produce Data in TIFF Format.  As explained in Section D *infra*, the production must be Bates numbered with accompanying load files containing available metadata and extracted text.  Available metadata fields will be identified prior to production as described in §B.1(d) and in the TIFF production those fields will be populated with the same information as if the Producing party were producing the documents in native format.  The Parties' understanding is that the searchability of metadata fields (referred to in §B.1(d)) and extracted text to be produced as part of the TIFF production will be functionally equivalent to the searchability of the same metadata fields and corresponding text if the same documents had been produced in native format.

    2.    <u>Production Media.</u>  The Producing Party shall produce Data on readily accessible computer or electronic media, including without limitation CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other media as the Parties may agree upon ("Production Media").  The Producing Party shall affix a unique identifying label to each piece of Production Media, which shall identify the date of the production and the sequence of the material in that production (for example, "Defendants' Production, WellPoint or Ingenix-00001-WellPoint or Ingenix-001000").  The Producing Party shall properly package all Production Media to ensure safe shipping and handling.

---

[5] The plaintiffs' proposal is aligned with the deadlines within the Case Management Order and will allow for the prompt identification of discovery disputes arising from the assertion of the privilege or work product rule.

Emails and attachments shall be listed on a log.  If an email chain is logged, it shall list the date and time of each email in the chain thereby enable the receiving party to decipher the number of emails at issue and whether or not any portion of the chain has been disclosed.

3. <u>Write Protection.</u> The Producing Party shall, before producing Data, make reasonable efforts to write-protect all Production Media that is capable of write protection. Such write protection should only be implemented in a manner that would not preclude the reasonable use of said Production data.

4. <u>Preservation of Original Documents.</u> The Producing Party shall retain a copy of all Data gathered and produced in this Litigation (including a copy of any documents that were gathered and ultimately withheld from production) until the Litigation is complete. The Producing Party shall take reasonable measures to maintain such copies in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production.[6]

5. <u>Related Documents.</u> If a file or document attaches another file or document (such as an icon indicating an email attachment) then the referenced document will be considered for purposes of this protocol as a "Related Document." To the extent technologically feasible, the Producing Party shall produce all linked or attached files, however referenced in the parent document, with the attachment immediately following the parent document in sequential order, while maintaining the relationship between the parent file and each of its attachments. In the event the Producing Party discovers that the production of related documents as provided in this paragraph is not technologically feasible for a category of potentially responsive Data, (*e.g.* links to intranet or internet sites that are embedded in emails, a category of documents that the Parties have already discussed and have agreed do not need to be produced as related documents) the

---

[6]The Court declined to adopt defendants' proposed language because it seeks to embody an "acknowledgment" of the proposition that production of data may change the metadata, which the plaintiffs have declined to accept. Nothing herein, however, constitutes a ruling as to whether or not the production may change meta data.

Producing party will notify the Requesting Party and the Parties will meet and confer to discuss it.  In the event the Requesting Party discovers that a document is provided without production of a "Related Document," the Requesting Party will notify the Producing Party and the Producing party will produce all Related Documents as soon as practicable after discovering or being notified of the issue (to the extent technologically feasible, as described above).

      6.    <u>De-Duplication</u>.  The Parties shall use software to identify duplicate documents that are in the files of individual or multiple Production Custodians. De-duplication will be performed according to SHAH 1, MD5 hash value algorithm, or other industry standard agreed to by the Parties. If there is any handwriting or other alteration of the document, it shall not be considered a duplicate under this provision.  If a duplicate document exists in the files of individual or multiple Production Custodians and that document is responsive and non-privileged, the Producing Party shall only be required to produce one copy of the document. The Producing party shall within five business days of each production produce a report of documents that were treated as duplicates under this provision along with available metadata fields (including, as applicable, any senders, addressees, dates, and the time of transmittal).  If the Producing Party becomes aware of any file that was incorrectly filtered during the de-duplication process, the Producing Party shall immediately produce the document to the Requesting Party.

      7.    <u>Appearance and Content.</u>  Subject to redactions by the Producing Party, each document's electronic image shall, to the extent reasonably practicable, convey the same information and image as the original document.

      8.    <u>Color.</u>  If an original document contains color and is incomprehensible without color, the Producing party will, upon request, produce the document in color to assist the Requesting Party in understanding the document. The Parties expect that there will be few

instance in which such requests will be necessary, and such requests should not be unreasonably be denied by the Producing Party.

**D. Production Procedures.**

    1.    <u>Creation of TIFF Files.</u>  The Producing Party shall (a) create single page group IV TIFF files of electronic documents (absent reasonable exceptions that must be discussed between the Parties prior to the production, the Producing Party may not create TIFF files of electronic documents but printing out paper copies of an electronic documents and then scanning from paper copies); and (b) create TIFF files of paper documents by, where reasonably practicable, scanning the original paper documents or a copy of the original paper documents that is as legible as the original.  Each TIFF shall be endorsed with a unique document identifier (*i.e.* Bates stamp).

    2.    <u>OCR.</u>  For TIFF files created from paper-based documents, the producing Party will, to the extent practical, supply an electronic translation of all text (typewritten or printed) contained on all images (OCR).  Said OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF Files ([Producing Party's Unique Chosen Identifier]-000000001.tif and [Producing Party's Unique Chosen Identifier]-000000001.txt).

    3.    <u>Extracted Text.</u>  For TIFF files generated from native format, the Producing party shall provide extracted and word searchable text files.  Said extracted text files shall be produced as document level extracted text files and be named consistently with their corresponding TIFF files (*e.g.,* WLP-000000.tiff and WLP-00000001.txt).

    4.    <u>Load Files.</u>  Subject to Paragraph 8 of this Section D, for Data that the Producing Party produces in TIFF format, the Producing party shall produce (a) a corresponding file that

relates to a set of scanned images that indicates where individual pages belong together as documents and/or attachments and may also contain Dat relevant to the individual document (a "Load File") to accompany the TIFF image, which shall include, for each file (I) if ascertainable, the original file name and complete file path where the file was located including all directories and subdirectories in order to convey the precise media the document was originally stored on, during the normal course of business; and (ii) if available, the metadata associated with the file; and (b) a corresponding file that contains a page-level cross reference between the TIFF images, their paths and/or locations, and their assigned document numbers (an "Image Load File").  Said load files shall be consistent with industry standard load files such as those associated with CONCORDANCE.  The Producing Party shall produce the documents in the manner and method calculated to make them usable at a reasonable cost/expense to the Producing party.  Each production will be accompanied by an explanation, in non-technical terms, of the sources of produced Data, including the name of the Production Custodian and the custodian's Data source (*e.g.,* email serve, paper files, hard drive, shared drive).  If in a particular instance the above steps are not reasonably possible, then the Producing Party shall disclose the nature and extent of the difficulties and the Parties will seek to agree on an alternate means of production.

     5.    Technical Specifications.   For Data that the Producing Party produces in TIFF Format, the Producing party shall produce all TIFF Files as single-page, black and white, dithered (if appropriate), Group 4 TIFF at 300 x 300 dpi resolution and 81/2 x 11 inch page size, except for documents requiring different resolution or page size.  The Producing Party shall accompany each TIFF format file with a unitization file in standard format (*e.g.,* Opticon, Summation DII) showing the unique document number of each page and the appropriate unitization of the documents.

6. <u>Document Numbering.</u>  For Data that the Producing Party produces, the Producing Party shall electronically "burn" a legible, unique Bates number onto each page at a location that does not obliterate, conceal or interfere with any information from the source document (document numbers shall identify the Producing Party's Unique Chosen Identifier and shall be in the format "[Party's Unique Chosen Identifier]-00000001") as appropriate.

7. <u>Claims of Confidentiality.</u>  For Data that the Producing Party produces, if the Producing Party is producing Data subject to a claim that it is protected from disclosure under the Discovery Confidentiality Order, the producing Party shall electronically "burn" the appropriate confidentiality designation under the Discovery Confidentiality Order on to each page of the document.  Consistent with the Discovery Confidentiality Order, any inadvertent failure to comply with this procedure shall not waive any protection or confidential treatment.

8. <u>Redactions.</u>  For Data that the Producing Party produces, if the Producing party is redacting information from a page, the Producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near the location of the redaction(s).  If the Producing Party redacts a document, it may withhold from the document's Load File only the metadata directly associated with the redaction.

9. <u>Descriptor Headings for the Metadata Fields and Other Technical Terms.</u>  All Load Files that include metadata, all technical terms, abbreviations, acronyms, or short-hand descriptions associated with the actual technical production of data shall be defined, described and explained to the extent practical.

10. <u>Authenticity.</u>  No Party shall object that Data produced pursuant to this Protocol is not authentic based upon the file-naming convention described in this Section. D.  The parties otherwise reserve all rights regarding their ability to object to the authenticity of documents,

including the inherent unreliability of metadata.

      11.    <u>Quality Control Measures.</u>  The Producing Party shall fix any problems associated with the production of Data under this Protocol promptly when detected. The Producing party shall take reasonable steps to ensure that all Data is produced without technical defects that could impair the use of such Data.  If either Party becomes aware of any potential defect or delay with any of the procedures described herein, that Party shall promptly advise the other Parties as soon as possible so that the Parties can meet and confer in an attempt to address the problem.  To the extent replacement data is required, the Producing Party shall promptly produce it.  Effective quality control measures will be instituted by all parties to ensure that the Production Methodology and Sections C and D herein work as intended by the Parties.

**E.**    **Terms and Conditions.**

      1.    <u>Cooperation.</u>  The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of Data.

      2.    <u>Variance.</u>  Any practice or procedure set forth herein may be varied by written agreement of the Parties, and subsequent Order of the Court.

      3.    <u>Dispute Procedures.</u>  The Parties shall meet and confer to resolve any procedures or disputes that arise under this Protocol.  If either Party objects to any actions taken by the other Party, the objecting Party shall state the specific objection in a letter to counsel of the other Party.  All disputes shall be presented using the joint letter protocol set forth in the Court's rules.

      4,    <u>Notices.</u>  All notices, requests and demands to or upon any of the Parties under this Protocol shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when (a) for delivery by mail or courier, when delivered, or three (3) business days after being deposited in the mail, postage prepaid, whichever is soonest;

or (b) for delivery by facsimile or e-mail, when received, addressed as follows, or to such other address as may be hereafter indicated by any Party.

|  |  |
|---|---|
| For Plaintiffs | Donald E. Haviland, Jr., Esquire<br>The Haviland Law Firm, LLC<br>111 S. Independence Mall East, Suite 1000<br>Philadelphia, PA 19106<br>(215)392-4400 fax<br>haviland@havilandlaw.com |
| For WellPoint Defendants | Craig Hoover, Esquire<br>Hogan & Hartson, LLP<br>Columbia Square<br>555 13th Street NW<br>Washington D.C. 20004<br>202-637-5910 fax<br>Cahoover@hhlaw.com |
| For Ingenix Defendants | Christopher R.J. Pace, Esquire<br>Weil, Gotshal & Manges, LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>Christopher.pace@weil.com |

Any of the Parties may change its address and transmission numbers for Notices by Notice in the manner provided in this Paragraph.

5.     Objections to Admissibility Preserved.  Nothing in this Protocol shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this action.

6.     No Waiver of Privileges.  Nothing in this Protocol, including any production of Data under this Protocol, shall constitute a waiver by any party of any claim of privilege or other protection from discovery.  In particular, as provided in the Discovery Confidentiality Order, no inadvertent production of any document or electronically stored information that the Producing party contends is privileged shall constitute a waiver of that privilege, and all procedures in that Order shall be followed with respect to such document or electronically stored information.

7. <u>Non-Parties.</u>  The production of any Data by any Non-Party shall be subject to and governed by the terms of this Protocol unless otherwise agreed to by the Parties or as ordered by the Court.

8. <u>Future Parties.</u>  In the event that any additional Party joins or is joined in this litigation or desires to have access to Discovery Material, it shall not have access to produced Data until the additional Party, by its counsel, has executed and field with the Court its agreement to be fully bound by this Protocol and the Discovery Confidentiality Order.  Said application shall be made via the joint letter protocol set forth in the Court's rules.

SO ORDERED BY THE COURT
this 27th day of July, 2009

s/Patty Shwartz
UNITED STATES MAGISTRATE JUDGE